NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IRIS N. SANCHEZ,**<br><br>        **Plaintiff,**<br><br>       v.<br><br>**COMMISSIONER OF**<br>**SOCIAL SECURITY,**<br><br>        **Defendant.** | Civ. No. 2:14-cv-05735 (WJM)<br><br>**OPINION** |

<u>**WILLIAM J. MARTINI, U.S.D.J.:**</u>

      Plaintiff Iris N. Sanchez brings this action seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying her Title XVI application for supplemental security income ("SSI"). For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

    **I.**    **LEGAL STANDARDS**

     **A. The Five-Step Sequential Analysis**

      Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity

1

("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

### B. Standard of Review

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## II.   BACKGROUND

Sanchez is a forty-six year old Paterson, New Jersey resident who seeks a finding of disability due to rheumatoid arthritis, HIV, and Hepatitis B or C. Administrative Transcript ("Tr."). 157, 161–62. Sanchez has a seventh-grade education, speaks English, and previously worked in retail and as a secretary. Tr. 25, 194.

In September 2009, Sanchez applied for SSI benefits under Title XVI. Tr. 157. Sanchez alleged that her disability arose in January 2003. Tr. 162. After both her initial application and her request for reconsideration were denied, Sanchez requested an administrative hearing. Tr. 71–72, 137–43. Following an October 2011 hearing, the ALJ denied Sanchez's claim. The ALJ determined that, in spite of Sanchez's severe rheumatoid arthritis and other non-severe impairments (including anxiety, HIV, kidney stones, and Hepatitis), she could perform a number of sedentary jobs that did not require repetitive fine fingering manipulations and, therefore, was not disabled. Tr. 19–33. In February 2013, the Appeals Counsel denied Sanchez's request to review the ALJ's decision. Tr. 6–11. Sanchez now appeals.

### A. Summary of the Record

The record contains medical reports from treating physicians Drs. Abas Rezvani and Harleen Brar, reports from two consultative examiners, Drs. Naphtali Britman and Raymond Briski, medical records from St. Joseph's Hospital (where Sanchez was treated

as an outpatient), Sanchez's initial application and hearing testimony, and interrogatory responses from vocational expert ("VE") Rocco Meola.

Dr. Rezvani treated Sanchez from May 2007 to September 2009 for renal stones and renal colic. Tr. 311. He indicated that she was able to go to work and had no functional limitations. Tr. 311–13.

Dr. Brar treated Sanchez for rheumatoid arthritis on an ongoing basis. Sanchez's level of pain varied throughout the relevant period. In December 2009, she had pain-free range of motion in her hands, wrists, elbows and shoulders; in January 2010, she had painful swelling of the knees and ankles; in February 2011, she had pain in her hands and knees, but not in her hips, and her range of motion was normal; in July 2011, her rheumatoid arthritis was uncontrolled despite medication, but by October 2011, her knee, hip, and neck pain were better. Tr. 417–18, 508, 515–16, 521.

Dr. Britman completed Sanchez's Disability Determination Services ("DDS") report. Tr. 414. That report indicated that Sanchez could sit for up to six hours in an eight-hour workday and had no manipulative limitations. Tr. 408–10. The DDS report further stated that Sanchez could lift up to ten pounds and occasionally climb ramps and stairs. Tr. 408–09. Dr. Briski reviewed and affirmed Dr. Britman's findings. Tr. 439.

Sanchez's outpatient records from St. Joseph's Hospital indicated that she is HIV positive, but that her HIV is controlled with medication and stable. Tr. 444, 447, 452. Her records also stated that she has controlled and inactive Hepatitis. Tr. 318–19, 459.

In her initial application for SSI benefits, Sanchez stated that: (1) she cooks meals; (2) cares for her children; (3) walks her children to school; (4) shops for food, clothes and toiletries; (5) uses public transportation; and (6) spends between six and seven hours once a week cleaning. Tr. 173–176.

Sanchez testified as follows. She takes medication for her rheumatoid arthritis, bladder pain, and HIV, which cause nausea, drowsiness, and headaches. Tr. 48–55. She walks with a cane and experiences daily pain due to her rheumatoid arthritis. Tr. 56, 58–61. She takes Xanax for anxiety attacks, which is prescribed by her primary care doctor, not a psychiatrist. Tr. 54, 68. She lives with her two children in a first floor apartment and climbs five steps to get inside. Tr. 64. She goes shopping, but cannot lift a five-pound bag of food at the grocery store, so her daughter does it for her. Tr. 63. Her children clean the house and make their own beds, but Sanchez makes her own bed and prepares meals. Tr. 63–64. She cannot sit for more than fifteen to twenty-five minutes, cannot stand for more than fifteen minutes, and cannot walk for more than half a block. Tr. 62, 65.

Interrogatories to VE Rocco Meola asked him to consider someone of Sanchez's age, education, and work experience who had a residual functional capacity ("RFC") to

perform sedentary work, but could not do continual and repetitive fine fingering manipulations, and could only perform one to two step tasks as a result of side effects from medication and anxiety. Tr. 28, 29, 246. Meola concluded that such an individual could find work as a hand mounter, preparer, or carding machine operator. Tr. 29, 247. He opined that there were 1,800 such jobs regionally, and 20,000 of them nationally. Tr. 29, 247.

### B. The ALJ's Decision

At step one, the ALJ determined that Sanchez had not engaged in substantial gainful activity since the application date. Tr. 24. At step two, the ALJ determined that Sanchez's rheumatoid arthritis was severe, but that her HIV, Hepatitis, anxiety, and kidney stones were not severe because they did not significantly impair her ability to do basic work activity. *Id*. At step three, the ALJ determined that the severity of Sanchez's impairments, individually or combined, did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. Tr. 25.

At step four, the ALJ determined that Sanchez has the residual functioning capacity ("RFC") to perform sedentary work, but could not do work that required continual and repetitive fine finger manipulation, and could perform tasks involving only one to two steps to complete. Tr. 25. Therefore, the ALJ determined that she could not perform any past relevant work. Tr. 28.

At step five, the ALJ relied on the VE's interrogatory answers to conclude that, given her RFC, Sanchez was capable of performing work as a carding machine operator, a hand mounter, or a preparer. Tr. 28–29. The ALJ found that these positions existed in significant numbers in the national economy. *Id*. In light of these findings, the ALJ concluded that Sanchez was not disabled under the Act. *Id*.

In determining that Sanchez was capable of such work, the ALJ noted that no doctor had ever reported Sanchez to be disabled or unable to work. Tr. 27. In fact, the ALJ noted that Sanchez goes shopping, does light housekeeping, and prepares meals. Tr. 27. The ALJ also noted that DDS found Sanchez had the ability to perform sedentary work with only occasional climbing of ramps and stairs. Tr. 27. Finally, the ALJ stated that Sanchez attended the hearing with earrings and well-coiffed hair—suggesting that she "is able to use her hands for fine finger manipulations on at least an occasional basis." Tr. 27.

The ALJ further ruled that Sanchez's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible. Tr. 26. In particular, the ALJ contrasted Sanchez's claims of daily pain with medical reports indicating that her kidney stones did not limit her ability to work, her HIV and Hepatitis were well-controlled, and her rheumatoid arthritis was "mild" and improving. Tr. 26–27.

4

### III. DISCUSSION

Sanchez challenges the ALJ's determination that she is not disabled under the Social Security Act, arguing that: (1) the ALJ erred in finding her HIV, Hepatitis, anxiety, and kidney stones were non-severe; (2) the ALJ erred in determining that her rheumatoid arthritis did not meet the criteria of a listed impairment; (3) the ALJ did not properly determine the credibility of her testimony; and (4) the VE incorrectly identified three jobs that Sanchez could perform when, in fact, she cannot perform those jobs.

#### A. The ALJ Did Not Err in Finding Sanchez's Impairments Non-Severe

Sanchez argues that the ALJ erred at step two when he found that her HIV, Hepatitis, anxiety, and kidney stones were not severe. The Court disagrees.

A medical impairment is "severe" when it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 416.921. An impairment is not severe, however, where the record demonstrates merely a "slight abnormality or a combination of slight abnormalities" that has, individually or in the aggregate, "'no more than a minimal effect on an individual's ability to work.'" *Magwood v. Comm'r of Soc. Sec.*, 417 Fed. App'x 130, 132 (3d Cir. 2008) (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003)). If an ALJ finds in favor of a claimant at step two, it is harmless error to erroneously conclude that some of the claimant's other impairments were not severe. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n. 2 (3d Cir. 2007); *see also Padilla v. Comm'r of Soc. Sec.*, No. CIV.A. 14-007 JBS, 2015 WL 1006262, at *9 n. 10 (D.N.J. Mar. 6, 2015) ("[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five.").

The ALJ found in Sanchez's favor at step two by determining that her rheumatoid arthritis was a severe impairment. Therefore, any error in concluding that Sanchez's other impairments were not severe is harmless. *Salles*, 229 Fed. App'x at 145 n. 2. Moreover, substantial evidence in the administrative record supports the ALJ's step two determination. Sanchez's HIV and Hepatitis are both controlled. Tr. 318–19, 444–47. She does not received any psychiatric treatment for anxiety, and is prescribed Xanax by her family doctor. Tr. 68. Her kidney stones do not prevent her from working. Tr. 311–13.

#### B. Substantial Evidence Supports the ALJ's Step Three Finding

Sanchez argues that the ALJ erred in finding that her rheumatoid arthritis, by itself or when considered in conjunction with her other impairments, did not meet the criteria of a disabling impairment. The Court disagrees.

At step three, the burden is on the claimant to show that an impairment meets or equals a listing-level impairment. *See Salles*, 229 Fed. App'x at 144. In order to show that inflammatory arthritis equals a listing level impairment, a person must have "persistent

5

inflammation or deformity [in a joint] . . . resulting in the inability to perform fine and gross movements effectively." 20 C.F.R. § 404, Subpt. P, App. 1, § 14.09A. Examples of an inability to perform fine and gross movements include "the inability to prepare a simple meal and feed oneself, [and] the inability to take care of personal hygiene[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(c).

Here, Sanchez testified that she prepares meals for herself and her children. The ALJ further noted that she presented at the hearing with well-coiffed hair and earrings—indicating that she is able to take care of personal hygiene. Sanchez did not provide any evidence demonstrating otherwise. Accordingly, Sanchez did not show that her arthritis equals the listing-level impairment.

At step three, the ALJ also considered the totality of Sanchez's impairments. The ALJ noted that: (1) her nephrologist had stated that Sanchez was able to work without limitation; (2) her HIV and Hepatitis were both stable and controlled; (3) DDS determined that Sanchez was able to perform sedentary work, (4) Sanchez had never seen a psychiatrist for her anxiety; and (5) no doctor has claimed Sanchez is disabled or otherwise unable to work for any reason. After considering each of Sanchez's impairments, the ALJ concluded that Sanchez was "more or less fully functional," accounting for limitations based on her medication side effects and anxiety at steps four and five.

### C. The ALJ's Credibility Assessment was not Erroneous

Sanchez challenges the ALJ's decision not to credit her testimony describing the intensity, persistence, and limiting effects of her pain. This challenge is meritless.

While a plaintiff's testimony of subjective pain and inability to perform even light work is normally entitled to great weight, an ALJ may reject those claims if he or she explains why they are inconsistent with the medical evidence of record. *See Harkins v. Comm'rr of Soc. Sec.*, 399 Fed. App'x 731, 735 (3d Cir. 2010) (citing *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990)). Moreover, when determining the credibility of a plaintiff's testimony, an ALJ may consider a plaintiff's medical treatment and ability to perform daily tasks. *See Harkins*, 399 Fed. App'x at 735; *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

In this case, the ALJ gave several well-supported reasons for his credibility determination. First, the ALJ pointed out that, although Sanchez claimed to have daily pain, her medical records showed that her impairments were generally controlled with medication or improved. Second, the ALJ noted that, despite Sanchez's testimony that she has pain in her hands and cannot do fine fingering manipulations, she presented at the hearing with well-coiffed hair and earrings. Third, the ALJ considered Sanchez's ability to perform daily tasks, *i.e.,* light housekeeping and meal preparation. Finally, the ALJ noted that no doctor had ever opined that Sanchez was disabled or could not work.

### D. Substantial Evidence Supports the ALJ's Step Five Determination

Sanchez argues that the ALJ erred in relying upon the VE's assessment at step five. Sanchez essentially disagrees with the VE's conclusion that the sedentary jobs of preparer, hand mounter, and carding machine operator do not require repetitive fine fingering manipulations. This argument holds no water. Sanchez's claim that these jobs "appear" to require repetitive fine fingering manipulation is directly contradicted by the Dictionary of Occupational Titles ("DOT"), which states that all three of these jobs require only occasional fingering. *See* DOT at 1991 WL 678937 (preparer), 1991 WL 688613 (hand mounter), 1991 WL 678151 (card machine operator). Thus, ALJ did not err in relying upon the VE's testimony in determining that Sanchez was not disabled.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

        /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 10, 2015**